Filed 4/24/23  P. v. Roberts CA3

<u>NOT</u> <u>TO</u> <u>BE</u> <u>PUBLISHED</u>

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Shasta)

----

|  |  |
|---|---|
| THE PEOPLE, | C095697 |
| Plaintiff and Respondent, | (Super. Ct. No. 19F3366) |
| v. | |
| GARRETT PAUL ROBERTS, | |
| Defendant and Appellant. | |

Defendant Garrett Paul Roberts pleaded no contest to a domestic violence charge and was granted probation.  Over the course of the ensuing year, he repeatedly failed to comply with the terms of probation, admitted probation violations, and was reinstated on probation.  Ultimately, to remain on probation, defendant admitted a probation violation and agreed to a stipulated upper term sentence, execution of which was suspended.  The trial court reinstated defendant on probation but did not impose sentence at that time.  After an additional period of noncompliance on probation, the trial court imposed the stipulated upper term sentence of four years in state prison.  Defendant appeals the

1

sentence imposed, contending: (1) the trial court erred under Penal Code section 1192.5[1] in failing to offer to allow him to withdraw his plea before imposing a sentence more severe than he bargained for; and (2) the court erred under Senate Bill No. 567 (2021-2022 Reg. Sess.) (Senate Bill 567) in imposing the upper term. We will affirm the judgment.

## FACTUAL AND PROCEDURAL BACKGROUND

The substantive facts underlying defendant's conviction are not relevant to our disposition and are therefore not recounted here.

In August 2019, defendant pleaded no contest to corporal injury upon a cohabitant. (§ 273.5, subd. (a).) In exchange, the parties agreed defendant would be granted three years' formal probation with 90 days of jail time and the remaining charges would be dismissed. The trial court advised defendant if he violated probation, he "could receive up to four years in prison." The plea form similarly indicated defendant was subject to a maximum four-year prison term. Defendant was released on his own recognizance, and the matter was set for sentencing on September 18, 2019. Defendant was ordered to report to the probation department and appear at the sentencing hearing. Defendant reported to probation but did not attend his scheduled probation interview. Defendant also failed to appear at his scheduled sentencing hearing.

The matter came on for sentencing on December 9, 2019. The court suspended imposition of sentence, admitted defendant to three years' formal probation, and ordered him to serve 180 days in county jail with credit for time served. The court imposed various fines and fees, including a $300 probation revocation fine (§ 1202.44) and a $500 domestic violence fine (§ 1203.097, subd. (a)(5)), both stayed pending successful completion of probation.

---

[1] Undesignated statutory references are to the Penal Code.

A probation revocation petition was filed on January 28, 2020, alleging defendant failed to attend numerous required programs and meetings and his whereabouts were unknown. The trial court revoked probation and issued a bench warrant. In March 2020, defendant admitted the allegations of the petition. The trial court reinstated defendant on probation, ordered him to meet with his probation officer and comply with probation programming, and set the matter on calendar in 90 days.

In June 2020, a probation revocation petition was filed alleging defendant had committed new offenses. Defendant denied the allegations. The trial court ordered defendant to immediately report to probation and continued the matter for three months.

On September 16, 2020, defendant failed to appear as ordered for his court date. The probation department had also filed another petition for revocation of probation based on defendant's failures to report to probation or file his monthly reports, and the fact that his whereabouts were unknown. The trial court revoked probation and issued a warrant. Defendant was later taken into custody and released on his own recognizance on October 30, 2020.

At the November 6, 2020, probation violation hearing, the court related some of defendant's probation history and suggested "what should happen is [defendant] should be placed on the edge, out on a limb. So he's looking at state prison or he abides by probation. So that's my idea on this. Instead of messing around with investigation as to whether or not he actually reported, he just decides he's going to change his life today and report, or he goes to prison for four years. So if he wants to go that route, he can today." After further discussion, the court suggested defendant would admit the probation violation and waive all his presentence custody credits, and that: "He's going to be sentenced to state prison for four years. He's going to be ordered to go to the Probation Department and start doing what he had promised he was going to do and come back in three months." The prosecutor agreed to the plea terms. Defendant discussed the proposed agreement with counsel, and he too agreed to the terms.

3

The trial court advised defendant of the rights he was waiving by admitting the probation violation. The court then informed defendant he was going to waive 213 days of custody credit and "[t]hat means if you end up going to prison, you are going to go for the full four years. You will serve it at 50 percent, but it will be a four-year state prison sentence." The court stated it did not want to send defendant to prison, but defendant was going to have to start working at probation: "If you don't, then you are looking at prison. If you fail to appear, you are looking at prison. [¶] . . .[¶] You are still going to be required to complete probation successfully. So that four years is going to be out there hanging over your head." After confirming defendant understood this agreement, defendant admitted the probation violation and the court accepted the admission. The court then ordered defendant to meet with probation and comply with all probationary terms. The court set the next hearing for February 9, 2021.[2] The court did not impose sentence.

Between February 2021 and August 2021, defendant completed less than one-third of his treatment program and, after June 2021, did not attend classes as required. Between August 2021 and November 2021, defendant repeatedly failed to report to probation or attend scheduled court hearings and did not attend any treatment program classes. Defendant was taken into custody in September 2021, pursuant to a bench warrant, and released on his own recognizance. He agreed to appear in court on October 29, 2021, and failed to do so. Defendant was taken into custody again, pursuant to a bench warrant, on November 17, 2021.

The matter came on for sentencing in February 2022. The parties and the court agreed a four-year sentence had previously been imposed, execution suspended. Despite

---

[2] The record on appeal does not include a reporter's transcript for the February 9, 2021, hearing. The clerk's transcript indicates defendant was present at the hearing and the matter was continued to August 10, 2021.

that, defense counsel argued defendant was entitled to the middle term, unless there were aggravating factors found in accordance with the statutory changes reflected in Senate Bill 567. The trial court disagreed, stating defendant's agreement to the upper term sentence was effectively an agreement that his case was an aggravated case. The trial court then stated it was "sentencing [defendant] to the agreed-upon term of four years. So I am lifting the stay of the execution of that sentence."

Defendant timely appealed.

## DISCUSSION

### I

*The Sentence Did Not Exceed the Terms of the Plea Agreement*

Relying on section 1192.5, defendant contends the trial court erred by imposing a sentence that exceeded the sentence he agreed to at the November 2020 hearing, without first offering him the opportunity to withdraw his plea. Specifically, defendant claims the plea he agreed to at the November 2020 hearing was that he would be reinstated on probation and sentenced to a four-year prison term, execution suspended. However, as defendant points out, he was not sentenced until February of 2022, at which time the trial court sentenced him to a four-year *unsuspended* sentence. He contends this four-year unsuspended sentence "obviously exceeded" the sentence he was promised.[3]

Section 1192.5 provides, in relevant part, that when a plea is accepted by the prosecuting attorney and approved by the court, the defendant "cannot be sentenced on the plea to a punishment more severe than that specified in the plea and the court may not

---

[3]    The People contend the four-year term was agreed to in the original plea to the substantive offense, prior to defendant's probation violation. This is a misreading of the record. The references in the original plea to a four-year term were advisements of the maximum term defendant could be subject to if he violated probation. Unlike a stipulated sentence, the inclusion of a specified maximum sentence does not preclude the trial court from exercising its discretion to impose a sentence less than the specified maximum. (See *People v. Shelton* (2006) 37 Cal.4th 759, 768.)

5

proceed as to the plea other than as specified in the plea." (§ 1192.5, subd. (b).) " 'Both the accused and the People are entitled to the benefit of the plea bargain.' " (*People v. Woods* (2017) 12 Cal.App.5th 623, 630.) Both parties to the agreement must abide by the terms, and the "punishment may not significantly exceed that which the parties agreed upon." (*People v. Walker* (1991) 54 Cal.3d 1013, 1024, overruled on different grounds in *People v. Villalobos* (2012) 54 Cal.4th 177.) "A sentence that imposes a punishment more severe than that specified in the plea bargain not only violates section 1192.5 but also implicates due process concerns and raises a constitutional right to some remedy. [Citation.]" (*People v. Brown* (2007) 147 Cal.App.4th 1213, 1221.) However, "[t]his does not mean that *any* deviation from the terms of the agreement is constitutionally impermissible." (*Walker*, at p. 1024.) "[T]he variance must be 'significant' in the context of the plea bargain as a whole to violate the defendant's rights." (*Ibid.*)

The facts here are not in dispute. The specific express terms of the plea agreement were defendant would be reinstated on probation and sentenced to a four-year prison term, execution suspended. However, at the November 2020 hearing, the trial court did not, in fact, impose the four-year sentence and suspend execution of sentence. Rather, after the court took defendant's admission, it ordered him to report to and comply with probation and ordered him back to court in 90 days. Over the course of the next 12 months, defendant was given an opportunity to, but did not meaningfully participate in his probation programs, and repeatedly failed to report to probation and attend scheduled court hearings. When the court ultimately imposed sentence, in February 2022, it imposed the agreed to four-year term.

To determine whether imposing an unsuspended prison sentence, rather than an execution suspended prison sentence, after defendant failed to comply with probation and violated section 1192.5, we must interpret the terms of the plea and determine whether there was a significant deviation from those terms.

6

" 'Because a "negotiated plea agreement is a form of contract," it is interpreted according to general contract principles.' [Citation.] ' "The fundamental goal of contractual interpretation is to give effect to the mutual intention of the parties. [Citation.] . . ." [Citation.] "The mutual intention to which the courts give effect is determined by objective manifestations of the parties' intent, including the words used in the agreement, as well as extrinsic evidence of such objective matters as the surrounding circumstances under which the parties negotiated or entered into the contract; the object, nature and subject matter of the contract; and the subsequent conduct of the parties. [Citations.]" ' [Citation.]" (*People v. Feyrer* (2010) 48 Cal.4th 426, 437, superseded by statute on a different point.)

It is clear from the record the mutual intention of the parties in entering this plea was to allow defendant one final chance to perform on probation *and* if he failed to do so, ensure he be sentenced to the upper term. The court repeatedly reiterated this as the fundamental nature of the agreement: defendant would be "placed on the edge, out on a limb," and that four-year sentence would be "out there hanging over [his] head"; he would either successfully complete probation or go to prison for four years, there were no other options. Both aspects were fundamental to the agreement: defendant would get another chance at probation, and, upon revocation of probation, the sentence was clear, the court would impose the four-year prison term.

Although the court did not impose an unsuspended sentence in February 2022, this did not violate the material terms of the plea agreement: defendant was given a final opportunity to perform on probation, and, after he failed, he was sentenced to the agreed term. Thus, unlike the circumstance where a court violates section 1192.5, the court did not exercise its discretion and withdraw its approval of the plea, or unilaterally modify the terms of the bargain without affording an aggrieved party the opportunity to rescind the plea agreement. Rather, the court imposed the agreed to sentence. (See *People v. Walker, supra*, 54 Cal.3d at p. 1024; *People v. Silva* (2016) 247 Cal.App.4th 578, 587.)

7

In the context of this plea bargain as a whole, we conclude there was no significant variance between the plea agreement and the sentence imposed and the punishment imposed did not exceed what the parties agreed upon. Rather, defendant got what he bargained for: a period of time in which to comply with probation and, upon failure to do so, an upper term sentence. Because there was no section 1192.5 error, or breach of the bargain, defendant is not entitled to withdraw his plea.

II

*Recent Amendments to Section 1170 Do Not Apply to this Stipulated Sentence*

Defendant argues the case should be remanded for resentencing because the trial court imposed the upper term on two counts with no aggravating facts stipulated to or admitted by defendant nor found true by a jury. Because defendant was sentenced in accordance with the plea agreement to a stipulated sentence, we reject this claim.

As relevant here, Senate Bill 567, effective January 1, 2022 (Stats. 2021, ch. 731) generally limits the trial court's ability to impose the upper term sentence unless aggravating circumstances that justify the imposition of a term in excess of the middle term have been stipulated to by the defendant or found true beyond a reasonable doubt by a jury or the judge in a court trial. (§ 1170, subd. (b)(1)-(2).) Senate Bill 567 applies retroactively to defendant's case under *In re Estrada* (1965) 63 Cal.2d 740. (*People v. Flores* (2022) 75 Cal.App.5th 495, 500.) However, because the record reflects that the parties entered into a plea agreement for a stipulated term, we conclude that Senate Bill 567 does not impact defendant's sentence.

In *People v. Mitchell* (2022) 83 Cal.App.5th 1051, review granted December 14, 2022, S277314, our colleagues in Division Five of the First District held the amendment to section 1170, subdivision (b) was not intended to apply to sentences imposed pursuant to stipulated plea agreements. (*Mitchell*, at pp. 1058-1059.) Citing to the language of the statute, "amended section 1170, subdivision (b)(1) states that where an offense provides for a sentencing triad, the trial court 'shall, in its *sound discretion*, order imposition of a

8

sentence not to exceed the middle term except as otherwise provided in paragraph (2),' " the *Mitchell* court reasoned that by sentencing the defendant to a stipulated term, "[t]he court had no opportunity to exercise any discretion in deciding whether the imposition of the upper, middle, or lower term would best serve 'the interests of justice' under former section 1170, subdivision (b). Indeed, when presented with a stipulated plea agreement, a trial court may either accept or reject it. ' "Should the court consider the plea bargain to be unacceptable, its remedy is to reject it, not to violate it, directly or indirectly." ' (*People v. Cunningham* (1996) 49 Cal.App.4th 1044, 1047.)" (*Id.* at p. 1058.)[4]

" ' "A plea agreement is, in essence, a contract between the defendant and the prosecutor to which the court consents to be bound." [Citation.]' " (*People v. Cunningham, supra*, 49 Cal.App.4th at p. 1047.) The parties to the agreement specify the terms of the agreement, which may include the length of the sentence to be imposed by the court. (§ 1192.5, subd. (a).) Having approved the plea, "the court may not proceed as to the plea other than as specified in the plea." (§ 1192.5, subd. (b); see *People v. Mitchell, supra*, 83 Cal.App.5th at p. 1058.)

We also find the reasoning in *People v. Brooks*, which considered the application of similar legislative changes, persuasive. (*People v. Brooks* (2020) 58 Cal.App.5th 1099, 1106-1107 [when trial court sentenced the defendant to a stipulated term, it was not exercising its triad sentencing discretion].)

Having found that the trial court's sentence was within the bounds of the stipulated plea agreement, we agree with the analysis in *Mitchell* and conclude the trial

---

**4**      We decline defendant's request, made during oral argument, to allow for supplemental briefing discussing section 1170, subdivision (b)(1) and the *Todd* court's distinction of the rationale in *Mitchell*. (*People v. Todd* (2023) 88 Cal.App.5th 373, petn. for review pending, petn. filed Mar. 22, 2023, S279154.)

court had no opportunity to exercise its discretion.  As such, we do not find recent amendments to section 1170 apply in this case.[5]

## DISPOSITION

The judgment is affirmed.


<u>        /s/             </u>
EARL, J.


We concur:


<u>     /s/          </u>
RENNER, Acting P. J.


<u>     /s/          </u>
KRAUSE, J.

---

[5]    We note our conclusion disagrees with our colleagues in *People v. Todd, supra*, 88 Cal.App.5th 373.